UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON SYSTEMS CORPORATION<br><br>Defendant. | Case No.: _____ |

**COMPLAINT OF THE UNITED STATES OF AMERICA**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Secretaries of the Departments of Defense, the Interior and Commerce, and the Administrator of the United States Environmental Protection Agency (EPA), alleges as follows:

### I. STATEMENT OF THE CASE

1.  This civil action by the United States seeks injunctive relief and cost recovery pursuant to environmental statutes; damages for injury to, destruction of or loss of natural resources under the trusteeship of the Secretaries of the Departments of Defense, the Interior (through the Fish and Wildlife Service) and Commerce (through the National Oceanic and Atmospheric Administration or NOAA) (collectively, the Federal Natural Resources Trustees) and for the reasonable costs of assessing such injury, destruction or loss, together with accrued interest; contractual relief; and other relief, from Textron Systems Corporation (TSC) arising out of the release by TSC of hazardous materials (as defined in the concurrently filed Consent Decree, which includes hazardous substances) at the Massachusetts Military Reservation Superfund Site (MMR or the Site) on Cape Cod,

Massachusetts. This action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended (CERCLA), 42 U.S.C. §9601, *et seq.*; the Safe Drinking Water Act (SDWA), 42 U.S.C. §300f, *et seq.*; Massachusetts Oil and Hazardous Substances Release Prevention Act, M.G.L. 21E, *et seq.*; and various contracts and land use agreements by which TSC had access to and assumed legal obligations with respect to MMR.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 28 U.S.C. §1331, because this action arises under the laws of the United States; Section 113(b) of CERCLA, 42 U.S.C. §9613(b); Section 1423(b) of SDWA, 42 U.S.C. §300h-2; Section 28 U.S.C. §1345, because the United States is a plaintiff; and Section 28 U.S.C. §1367, establishing Supplemental Jurisdiction for related claims alleged herein brought pursuant Massachusetts law.

3. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. §9613(b), and 28 U.S.C. §1391(b), because the claims arose, and the threatened or actual releases and damages occurred, in this District.

## III. DEFENDANT

4. Textron Systems Corporation is a Delaware corporation and a wholly owned subsidiary of Avco Corporation, with its corporate headquarters and principal place of business in Wilmington, Massachusetts. Within this Complaint, TSC shall refer to Textron Systems Corporation and its corporate predecessors, AVCO Systems and Textron Defense Systems.

5. TSC is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

## IV. FACTS GIVING RISE TO LIABILITY

### A. The MMR Site

6. MMR is a 21,000 acre facility located in Cape Cod, in the towns of Bourne, Falmouth, Mashpee and Sandwich in Barnstable County, Massachusetts. MMR is listed as Camp Edwards and Otis Air Force Base on the National Priorities List (NPL) of hazardous waste sites in accordance with 54 Fed. Reg. 48184, November 21, 1989. Located in the Southeast corner of the Camp Edwards portion of MMR are the J-1, J-2, and J-3 defense contractor weapons systems test ranges, which collectively comprise approximately 120 acres.

7. Commencing in 1968, TSC performed services for the Departments of the Army, Air Force and other federal entities at MMR pursuant to contracts, leases, and licenses (the contracts).

### B. Disposal by TSC at MMR

8. During the time TSC operated at MMR, it released wastes into the environment in a manner neither authorized nor anticipated in any contract, lease, or license with the United States. These releases include, but are not limited to, the following:

   a. The release of pinkwater wastes on the ground at the J-1 and J-3 Ranges of MMR. Pinkwater is listed as a hazardous waste pursuant to 40 CFR §261.32 (Hazardous wastes from specific sources; Explosives; K047; Pink/Red Water from TNT operations). The pinkwater wastes TSC discharged at MMR also contained other wastes and hazardous substances as defined in CERCLA. The pinkwater wastes migrated to other areas at MMR;

   b. The disposal at MMR, including the unauthorized burial in the J Ranges, of munitions and explosives from TSC's Wilmington, Massachusetts facility; and

  c.  The dumping and burying of spent shell casings and other materials containing wastes and hazardous substances at the J-2 Range, at which TSC had no contract to perform work. The materials TSC disposed of at the J-2 Range came from other areas of the MMR Site and off-site locations.

9. These actions by TSC caused the injury to, destruction of, or loss of natural resources under the trusteeship of the Department of Defense, the Fish and Wildlife Service and NOAA, and caused the Federal Natural Resource Trustees to incur continuing costs for assessing such injury, destruction or loss, together with accrued interest.

### C. Administrative Actions and Incurrence of Costs by the United States

10. In March 2002, EPA entered into an administrative consent order with TSC pursuant to Section 300i of the SDWA, 42 U.S.C. §1431, which included the determination that contaminants released at the Site are present in or are likely to enter into a public water system or underground source of drinking water at MMR and may present an imminent and substantial endangerment to the health of persons.

11. The United States, including the Army and EPA, has incurred response costs and other costs in connection with the releases of wastes at MMR, including costs of investigations; removal actions; remediation of soil and groundwater; and for oversight. At all times relevant, the United States has acted in a manner not inconsistent with the National Contingency Plan, 40 CFR Part 300, *et seq.*, and has satisfied any other applicable prerequisites to filing herein.

### V. CLAIMS FOR RELIEF

#### A. First Claim for Relief: Injunctive Relief under Safe Drinking Water Act

12. Paragraphs 1 through 11 are incorporated by reference.

13. Section 1431(a) of the Safe Drinking Water Act (SDWA), 42 U.S.C. §300i(a), provides, in pertinent part:

> Notwithstanding any other provision of this subchapter, the Administrator, upon receipt of information that a contaminant which is present in or is likely to enter a public water system or an underground source of drinking water, . . . which may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons, may take such actions as he may deem necessary in order to protect the health of such persons. . . . The action which the Administrator may take may include (but shall not be limited to) . . . (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.

14. TSC, by virtue of the March 2002 order and findings by EPA, is liable under Section 1431(a) of SDWA, 42 U.S.C. §300i(a), to take such actions as the Administrator of EPA may deem necessary to protect the health of persons.

### B. Second Claim for Relief: Cost Recovery under CERCLA

15. Paragraphs 1 through 11 are incorporated by reference.

16. Section 107(a) of CERCLA, 42 U.S.C. §9607(a), provides, in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –
> (1) the owner or operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . . and
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
>     (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan . . . .

17. TSC, by virtue of its releases of hazardous substances at MMR, falls within the class of responsible parties who are liable under Section 107(a) of CERCLA to the United States for response costs incurred in connection with TSC's activity at MMR.

### C. Third Claim for Relief: Natural Resource Damages Under CERCLA

18. Paragraph 1 through 11 are incorporated by reference.

19. Section 107(a)(1-4)(C) of CERCLA, 42 U.S.C. §9607(a)(1-4)(C), provides that a party who is liable under subsections 107(a)(1-4) shall be liable for:

> damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

20. TSC, by virtue of its disposal of hazardous substances at MMR, is liable to the Federal Natural Resource Trustees for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

### D. Fourth Claim for Relief: Contractual Obligations to Restore Property

21. Paragraphs 1 through 11 are incorporated by reference.

22. The contracts with the United States under which TSC was authorized to conduct activities at MMR required, among other things, that TSC repair or restore any waste or damage to the property and return the property to the United States undamaged upon vacating MMR. TSC has not restored the property to the condition it was in upon execution of the land use contracts.

23. TSC is liable in damages under its contracts with the United States for the costs of environmental restoration at MMR.

### E. Fifth Claim for Relief: Massachusetts Oil and Hazardous Material Release Prevention and Response Act

24. Paragraphs 1 through 11 are incorporated by reference.

25. Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E §4, provides, *inter alia*, as follows:

> Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action.

26. As alleged in Paragraph 11, the United States has incurred costs in performing response actions as a result of TSC's releases of hazardous materials within the meaning of M.G.L. c. 21E at the MMR Site. TSC is liable for reimbursement of such costs.

### VI. REQUEST FOR RELIEF

27. Based upon the foregoing, the United States will continue to incur costs and sustain damages by virtue of the continuing presence of hazardous materials at MMR attributable to TSC. Wherefore, the United States respectfully requests that this Court:

   a. Require Defendant to take such action as is necessary to protect the public health, welfare and the environment at MMR Site from threats attributed to TSC as set forth in this Complaint; and

   b. Enter a judgment against Defendant and in favor of the United States for costs and expenses incurred or to be incurred by the United States in connection with MMR

attributable to TSC pursuant to the environmental statutes, contracts and tort law cited herein.

Respectfully submitted,

*[signature]*
RONALD J. TENPAS
Acting Assistant Attorney General

*[signature]*
STEVEN R. BAER, Senior Counsel
DAVID L. GORDON, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-2794
(202) 514-4180 fax
steven.baer@usdoj.gov
david.l.gordon@usdoj.gov

MICHAEL J. SULLIVAN
United States Attorney
GEORGE B. HENDERSON, II
Assistant United States Attorney
United States Courthouse
1 Courthouse Way - Suite 9200
Boston, Massachusetts 02210
(617) 748-3282
george.henderson2@usdoj.gov

Of Counsel:
Lieutenant Colonel Thomas Strunck
Chief, Affirmative Environmental Claims Branch
United States Army Environmental Law Division
901 N. Stuart Street - Suite 400
Arlington, Virginia  22203-1837
(703) 696-1648

William Walsh-Rogalski
Counsel for Special Projects
United States Environmental Protection Agency - Region 1
Boston, Massachusetts 02110
(617) 918-1035